***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the deputy commissioner hearing and in a pre-trial agreement, as:
 STIPULATIONS
1. Employee is George Anker.
2. Employer is Mohican Mills.
3. The carrier on the risk is The Hartford Insurance Group.
4. An Employee-Employer relationship existed between Plaintiff-Employee and Defendant-Employer.
5. The average weekly wage was $412.75 yielding a comp rate of $275.30 per week.
6. Plaintiff alleges the date of injury by accident was January 25, 2000.
7. The Defendant-Employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act.
8. The nature of the injury was a recurrent HNP at C3-4.
9. The parties agreed to stipulate to the following: Pre-Trial Agreement, Medical Records stipulated as Document No. 1, Industrial Commission Forms stipulated as Document No. 2, and Supervisor's Accident Report as Document No. 3.
10. The depositions of Dr. Raymond C. Sweet, Dr. Larry W. Boyles and Dr. Donald Bias were taken and have been received into the record.
 ***********
Based upon the competent evidence of record, the Full Commission finds as fact and concludes as matters of law the following:
 FINDINGS OF FACT
1. Plaintiff's date of birth is October 17, 1964. He was 36 years old on the date of the deputy commissioner hearing and has completed the 11th grade. Prior to his last employment with defendant, plaintiff worked in various mills throughout his life including multiple stints for the defendant. He also worked in Florida as a carpenter and worked at Hubbard Mills as a jet operator until 1993.
2. Defendant rehired plaintiff in March 1997. Plaintiff was hired to work in the drug room. In June 1999, plaintiff was transferred from the drug room to the dye house. Plaintiff was transferred back to the lab in February of 2000. On June 25, 2000 he was working as a tub operator for defendant. This position required him to operate the machines which dye cloth under pressure including loading and unloading the dye cloth from the machines. Plaintiff last worked for defendant on May 16, 2000, when he left work because of the injury he sustained on January 25, 2000.
3. On January 25, 2000, approximately ten minutes before plaintiff's shift changed, plaintiff had unloaded his machine and was attempting to lift a metal extension out of his machine when his left arm gave away and Plaintiff felt a pop in his neck. The metal extension weighed approximately 50 pounds. Plaintiff immediately reported his injury to Todd Auten who was working with him at the time. Plaintiff then went to the dye office and reported his injury to Benny Navey.
4. The following day, January 26, 2000, plaintiff filled out an accident report with his floor supervisor, Larry Hord. Plaintiff was still having pain in his neck and left arm. Mr. Hord sent plaintiff to see the plant nurse. The nurse provided no treatment and told plaintiff that the injury was not work-related and that he should see his primary care provider. Defendants had notice of the on-the-job injury and did nothing to investigate the claim other than a brief check by the plant nurse. Plaintiff returned to his job station and completed the remainder of his shift. Plaintiff then made an appointment with his doctor, Dr. Donald Bias, on February 15, 2000. This was the first visit with Dr. Bias where Dr. Bias documented neck pain. Plaintiff had been treating with Dr. Bias for other problems since October 23, 1998.
5. Plaintiff had prior problems with his neck. In 1995, Plaintiff was in a motor vehicle accident where he injured his neck. Plaintiff had surgery, consisting of a fusion at C4-5 and C5-6, on July 24, 1997, by Dr. David Jones. After surgery, plaintiff continued having problems with pain, numbness, and tremors particularly in his lower extremities. Plaintiff was treated by Dr. Bias and Dr. Larry Boyles, a neurologist, for this condition. Plaintiff's last medical care prior to January 25, 2000, was with Dr. Bias on September 17, 1999.
6. After the January 25, 2000, injury plaintiff missed some work due to pain, but he felt that he had to continue to work in order to pay his child support. Plaintiff's neck and left arm pain worsened to the point where he was having difficulty using his left arm.
7. Due to the increased pain in his neck and left arm, plaintiff sought further medical treatment with Dr. Bias on May 8, 2000. Dr. Bias documented pain radiating down his left arm and neck. Plaintiff followed up with Dr. Bias four days later, with the same complaints.
8. Plaintiff was seen by Dr. Larry Boyles on May 16, 2000. Dr. Boyles recommended an MRI. The May 25, 2000, MRI revealed a herniated disc at C3-4 with spinal cord deformity on his left side. Dr. Boyles recommended surgery and referred plaintiff to a neurosurgeon at Bowman Gray at Wake Forest University.
9. On June 2, 2000, while traveling to Bowman Gray, plaintiff was rear-ended while driving his automobile. Plaintiff drove to Bowman Gray and was seen in the emergency room. He was released from the emergency room with a diagnosis of left shoulder contusion and lumbar strain.
10. Plaintiff saw Dr. Raymond Sweet, a neurosurgeon, on July 13, 2000. Dr. Sweet found that plaintiff needed surgery at C3-4 and performed an anterior cervical fusion at C3-4 on July 21, 2000.
11. Dr. Larry Boyles wrote plaintiff out of work on May 16, 2000. Plaintiff last worked for Defendant on May 16, 2000. Plaintiff continues to have significant pain in his neck, left arm, right hand, lower back and legs. Plaintiff has trouble with numbness in his left arm and leg and has difficulty keeping his balance. He can walk only short distances and uses a cane most of the time.
12. Plaintiff is presently receiving Social Security Disability benefits.
13. The first time that Dr. Donald Bias documented a specific complaint of neck pain was when he saw plaintiff on February 15, 2000. That was also the first time that Dr. Bias recommended physical therapy or pain management for plaintiff's neck.
14. May 16, 2000, was the first time that plaintiff complained to Dr. Boyles of problems in his neck and upper extremities. The MRI ordered by Dr. Boyles revealed a free fragment of the disc at C3-4 impinging on the spinal cord in addition to postoperative changes. The disc fragment was one level higher than the levels of plaintiff's prior surgery.
15. As Dr. Boyles testified, plaintiff already needed surgery for a ruptured disc prior to his automobile accident on June 2, 2000, as evidenced by plaintiff's prior MRI. Further, there was no indication of significant, additional injury to plaintiff's cervical spine as a result of the June 2 automobile accident aside from a possible increase in pain. There is no indication that plaintiff intentionally caused the automobile accident on June 2, 2000.
16. The January 25, 2000, specific traumatic incident described by plaintiff caused the herniated disc or otherwise caused the condition necessitating surgery. If plaintiff's neck condition at C3-4 had gone untreated, his symptoms would likely have gotten worse.
17. Dr. Boyles and Dr. Raymond Sweet testified that plaintiff was permanently and totally disabled in large part due to his neck condition and the resulting pain.
18. Based on Dr. Sweet's testimony, the Full Commission finds that the January 25, 2000, specific traumatic incident caused plaintiff's herniated disc at C3-4 and necessitated surgery by Dr. Sweet.
19. Having heard the testimony at the hearing and having reviewed the evidence, the Deputy Commissioner found plaintiff's testimony to be credible. Having reviewed the record, the Full Commission finds that the record as a whole supports the Deputy Commissioner's conclusion, and the Full Commission accepts plaintiff's testimony as credible.
20. Before the Commission are two motions which are relevant to plaintiff's allegation that he is permanently and totally disabled. First, plaintiff has filed a motion to introduce additional evidence in the form of report and deposition from Patrick Clifford of Clifford Vocational Services. Second, defendants have filed a motion to compel plaintiff's attendance at an IME and FCE and vocational assessment coordinated by defendants. The Full Commission finds that the evidence is not fully developed on the issue of the extent of plaintiff's disability, and that the Commission is not able to determine whether plaintiff is permanently and totally disabled. The Full Commission, therefore, grants both motions. Because plaintiff has not had a FCE and has not participated in vocational counseling, the Full Commission finds that it is premature to consider whether plaintiff is permanently and totally disabled. Should plaintiff contend that he is permanently and totally disabled after completing the IME, FCE, and participating in vocational counseling, he may file a Form 33 and request a hearing on this issue.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a specific traumatic incident to his cervical spine on January 25, 2000, which herniated a disc at C3-4 and aggravated a pre-existing condition in Plaintiff's neck, necessitating surgery. G.S. § 97-2(6).
2. The automobile accident on June 2, 2000, did not significantly aggravate or injure plaintiff's cervical spine and does not constitute an intervening act which would obviate defendants' liability for the January 25, 2000, injury and subsequent surgery. See Carter v. NorthernTelecom, 123 N.C. App. 547, 473 S.E.2d 774 (1996).
3. Plaintiff is entitled to temporary total disability benefits from May 16, 2000, until such time as Plaintiff returns to work or a determination is made regarding permanent total disability, or until other order of the Commission. G.S. § 97-29.
4. Plaintiff is entitled to medical treatment incurred as a result of the compensable injury on January 25, 2000, to the extent that such treatment tends to effect a cure, give relief, or lessen the period of plaintiff's disability, subject to the limitations of Section 97-25.1. G.S. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability benefits as a result of his specific traumatic incident on January 25, 2000, at a compensation rate of $275.30 from May 17, 2000, until Plaintiff returns to work, a determination is made regarding permanent total disability, or other Order of the Commission.
2. Defendants shall pay all reasonable medical expenses for treatment necessitated by the compensable injury on January 25, 2000, which treatment tended or tends to effect a cure, give relief, or lessen the period of plaintiff's disability, subject to the limitations of Section97-25.1.
3. A reasonable attorney's fee in the amount of twenty-five percent of the compensation benefits due under paragraph 1 of this Award and any accrued amount is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent of the lump sum due plaintiff under paragraph 1 of this Award shall be deducted from that sum and paid directly to plaintiff's counsel. In regard to future total disability compensation, plaintiff's attorney shall receive every fourth check.
4. Plaintiff's motion to admit additional evidence, consisting of the report and deposition from Patrick Clifford of Clifford Vocational Services is granted, and this evidence is made a part of the record in this action.
6. Defendants' motion to compel plaintiff's attendance at an IME and FCE and vocational assessment coordinated by defendants is granted. Plaintiff shall see a doctor selected by defendants for purpose of an independent medical examination and submit to reasonable diagnostic tests as may be appropriate for determining plaintiff's condition and ability to work. Plaintiff shall also attend and fully participate in a functional capacity examination at a facility selected by defendants. Defendants shall also appoint a vocational counselor to assist plaintiff in securing employment commensurate with the results of the FCE and the restrictions determined by the examining physicians. Plaintiff is ordered to cooperate with the vocational counseling.
7. Should plaintiff contend that he is permanently and totally disabled after completing the IME, FCE, and participating in vocational counseling, he may file a Form 33 and request a hearing on this issue.
8. Defendants shall pay the costs, subject to Rule 7(c) of the Commission Rules for Mediated Settlement and Neutral Evaluation Conferences.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER